**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

| | |
|---|---|
| **EVERCOM SYSTEMS, INC.,** | |
| **Plaintiff/Counter-Defendant,** | **CIVIL ACTION NO. 1:09-CV-90-M** |
| **v.** | **JURY TRIAL DEMANDED** |
| **COMBINED PUBLIC COMMUNICATIONS, INC.,** | |
| **Defendant/Counter-Plaintiff/Third-Party Plaintiff,** | |
| **v.** | |
| **SECURUS TECHNOLOGIES, INC.,** | |
| **Third-Party Defendant,** | |

**COMBINED PUBLIC COMMUNICATIONS, INC.'S FIRST AMENDED
ANSWER, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

**Answer**

For its answer to the complaint of plaintiff/counter-defendant Evercom Systems,

Inc. ("Evercom") defendant/counter-plaintiff/third-party plaintiff Combined Public

Communications, Inc., ("CPC") states as follows:

**Responses to Evercom's Allegations**

**Parties**

1.      CPC is without knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 1 of the complaint and therefore denies

these allegations.

DLI-6343609v5

2.      CPC's principal place of business is Cold Springs, Kentucky, and CPC therefore denies that its principal place of business is Cincinnati, Ohio.  CPC otherwise admits the allegations in paragraph 3 of the complaint.

**Jurisdiction and Venue**

3.      The allegations in paragraph 3 of the complaint call for a legal conclusion for which no response is required.  To the extent a response is required, CPC denies these allegations.

4.      CPC is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the complaint and therefore denies these allegations.

5.      CPC admits only that it conducts business and has entered into contracts in the Commonwealth of Kentucky and denies all other remaining allegations in paragraph 5 of the complaint.

6.      The allegations in paragraph 6 of the complaint call for a legal conclusion for which no response is required.  To the extent a response is required, CPC denies these allegations.

**Nature of the Action**

7.      The allegations in paragraph 7 of the complaint call for numerous legal conclusions for which no response is required.  To the extent a response is required, CPC denies these allegations.  CPC further denies all remaining factual allegations in paragraph 7.

DLI-6343609v5

**Facts**

8.     CPC is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the complaint and therefore denies these allegations.

9.     CPC admits the allegations in paragraph 9 of the complaint

10.     CPC avers that any agreements between Evercom and the Spencer Co. Sherriff's Department speak for themselves and denies all other remaining allegations in paragraph 10 of the complaint, including any effort to expand, interpret, or mischaracterize these agreements.

11.     CPC avers that any agreements between Evercom and the Spencer Co. Sherriff's Department speak for themselves and denies all other remaining allegations in paragraph 11 of the complaint, including any effort to expand, interpret, or mischaracterize these agreements.

12.     CPC is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the complaint and therefore denies these allegations.

13.     CPC admits that it was aware that Evercom's equipment was installed in the facility but otherwise denies the allegations in paragraph 13 of the complaint.

14.     CPC denies the allegations in paragraph 14 of the complaint.

15.     CPC avers that any written correspondence from Evercom to CPC speaks for itself and denies all other remaining allegations in paragraph 15 of the complaint, including any effort to expand, interpret, or mischaracterize this correspondence.

- 3 -

DLI-6343609v5

16.    CPC avers that any written correspondence from Evercom to CPC speaks for itself and denies all other remaining allegations in paragraph 16 of the complaint, including any effort to expand, interpret, or mischaracterize this correspondence.

17.    CPC avers that any written correspondence from the Spencer Co. Sherriff's Department to Evercom speaks for itself and denies all other remaining allegations in paragraph 17 of the complaint, including any effort to expand, interpret, or mischaracterize this correspondence.

18.    CPC denies the allegations in paragraph 18 of the complaint.

19.    CPC avers that any agreements between Evercom and the Crawford County Sherriff's Department speak for themselves and denies all other remaining allegations in paragraph 19 of the complaint, including any effort to expand, interpret, or mischaracterize these agreements.

20.    CPC avers that any agreements between Evercom and the Crawford County Sherriff's Department speak for themselves and denies all other remaining allegations in paragraph 20 of the complaint, including any effort to expand, interpret, or mischaracterize these agreements.

21.    CPC is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the complaint and therefore denies these allegations.

22.    CPC admits that it was aware that Evercom's equipment was installed in the facility but otherwise denies the allegations in paragraph 22 of the complaint.

23.    CPC denies the allegations in paragraph 23 of the complaint.

- 4 -

24.    CPC avers that any written correspondence from the Sherriff for Crawford County to Evercom speaks for itself and denies all other remaining allegations in paragraph 24 of the complaint, including any effort to expand, interpret, or mischaracterize this correspondence.

25.    CPC avers that any written correspondence from Evercom to CPC speaks for itself and denies all other remaining allegations in paragraph 25 of the complaint, including any effort to expand, interpret, or mischaracterize this correspondence.

26.    CPC denies the allegations in paragraph 26 of the complaint.

27.    CPC avers that any agreements between Evercom and the Monroe County Jail, Thompkinsville, Kentucky speak for themselves and denies all other remaining allegations in paragraph 27 of the complaint, including any effort to expand, interpret, or mischaracterize these agreements.

28.    CPC denies the allegations in paragraph 28 of the complaint.

29.    CPC denies the allegations in paragraph 29 of the complaint.

30.    CPC avers that any written correspondence from the Monroe County Jail, as that term is defined in the complaint, to Evercom speaks for itself and denies all other remaining allegations in paragraph 30 of the complaint, including any effort to expand, interpret, or mischaracterize this correspondence.

31.    CPC denies the allegations in paragraph 31 of the complaint.

**Count I: Tortious Interference with Contract**

32.    CPC incorporates by reference paragraphs 1 through 31 of this answer.

- 5 -

33.     CPC is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the complaint, and therefore denies these allegations.

34.     CPC denies the allegations in paragraph 34 of the complaint.

35.     CPC denies the allegations in paragraph 35 of the complaint.

36.     CPC denies the allegations in paragraph 36 of the complaint.

37.     CPC denies the allegations in paragraph 37 of the complaint.

**Count II: Declaration of Rights**

38.     CPC incorporates by reference paragraphs 1 through 37 of this answer.

39.     CPC admits only that there is an actual and justiciable case or controversy between the parties, but otherwise denies all other remaining allegations in paragraph 39 of the complaint.

40.     Paragraph 40 of the complaint is request for relief for which no response is required.  To the extent a response is required, CPC denies these allegations.

**Conclusion and Prayer**

CPC incorporates by reference paragraphs 1-40 of its answer.  CPC denies that Evercom is entitled the declaratory relief, monetary damages, punitive damages, injunctive relief, interest, attorneys' fees, or any other relief.  CPC further denies that it committed any wrongful actions alleged in the complaint or that it is liable for any of Evercom's claims.  CPC also denies that it intentionally and tortiously interfered with any of Evercom's prospective or existing business relationships.

CPC expressly denies all allegations of the complaint not expressly admitted herein.

- 6 -

DLI-6343609v5

**<u>Affirmative Defenses</u>**

41.     Evercom's complaint fails to state a claim upon which relief can be granted.

42.     Evercom's claims are barred in whole or in part by the doctrines of equitable estoppel, judicial estoppel and/or waiver.

43.     Evercom's own acts or omissions legally caused and/or contributed to its alleged damages, if any.

44.     Evercom's claims are barred in whole or in part by its prior litigation and settlement agreements with Lattice, Inc., the product manufacturer and servicer of CPC's telecommunication equipment.

45.     Evercom's claims are barred in whole or in part by the doctrine of unclean hands.

46.     Evercom's claims are barred in whole or in part because Evercom breached, failed to satisfy a condition precedent of, or failed to perform the contracts with which CPC allegedly interfered.

47.     Evercom's claims are barred in whole or in part because Evercom terminated or constructively terminated the contracts with which CPC allegedly interfered.

48.     Evercom's claims are barred in whole or in part because the contracts with which CPC allegedly interfered were invalid.

49.     Evercom's claims are barred in whole or in part because Evercom did not have a reasonable business expectancy with the governmental entities named in its complaint.

- 7 -

50.    Any allegedly wrongful acts and/or omissions alleged against CPC did not proximately cause Evercom's alleged damages, if any.

51.    Any allegedly wrongful acts and/or omissions alleged against CPC were privileged.

52.    Any allegedly wrongful acts and/or omissions alleged against CPC were legally excused or justified.

53.    CPC pleads all applicable affirmative defenses set forth in Rule 8(c)(1) of the Federal Rules of Civil Procedure and not already set forth herein as affirmative defenses to the complaint.

## CPC's Counterclaims and Third-Party Complaint

For its counterclaims against Evercom and its third-party claims against Securus Technologies, Inc. (collectively referred to as "Evercom Defendants"), CPC states as follows:

## Parties

1.    Counter-Plaintiff Combined Public Communications, Inc. is an Ohio Corporation with its principal place of business in Cold Springs, Kentucky.  It provides telecommunications services in several states, including the Commonwealth of Kentucky and the State of Indiana.

2.    Counter-Defendant Evercom is a Delaware corporation with its principal place of business in Dallas, Texas.  It provides telecommunications services in, among other places, the Commonwealth of Kentucky and the State of Indiana.  Evercom is a subsidiary of Securus Technologies Inc.

3.    On information and belief, Third-Party Defendant Securus Technologies, Inc. ("Securus") is a Delaware Corporation with its principal place of

- 8 -

DLI-6343609v5

business in Dallas, Texas.  Securus does business in the Commonwealth of Kentucky and the State of Indiana by, among other things, providing telecommunications services.

## Jurisdiction And Venue

4.      This Court has subject matter jurisdiction over these claims and counterclaims pursuant to 28 U.S.C. § 1332 by virtue of the diversity of citizenship of the parties and the amount in controversy, which exceeds $75,000, excluding interests and costs.  In addition, this Court has supplemental jurisdiction over CPC's counterclaims and third-party claims pursuant to 28 U.S.C. § 1337.

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391 because all Counter-Defendants and Third-Party Defendants reside in the Western District of Kentucky.

## Facts

6.      CPC and the Evercom Defendants contract with governmental entities responsible for operating jails and, pursuant to these contracts, provide telecommunications services to inmates.  In consideration for these services, CPC or the Evercom Defendants typically retain a percentage of the revenues collected from inmates and the recipients of inmate calls.  The governmental entity operating the jail, often a county or county subdivision such as the Sherriff's department, also shares in the revenues collected from inmate calls.  Like other service contracts, these contracts have an effective date, term, and renewal provisions as negotiated by the parties.

7.      In Kentucky and Indiana, CPC competes with the Evercom Defendants to secure business from counties and county Sherriff's departments.  In many respects, this competition resembles that of any industry in which businesses

- 9 -

compete.  CPC and the Evercom Defendants make representations to potential clients in which each entity attempts to distinguish its services from that of the competition. In addition, this competition often results in the Evercom Defendants replacing CPC as the incumbent service provider, and, likewise, CPC often replaces the Evercom Defendants.  CPC and the Evercom Defendants also compete to retain the best talent for their sales and operating departments.

8.     Although CPC and the Evercom Defendants have competed against each other for many years, over the last six years the Evercom Defendants have adopted an increasingly hostile posture towards CPC.  This hostility first became apparent when the Evercom Defendants began refusing to remove their equipment from jails after those jails had contracted with CPC to replace the Evercom Defendants.  Beginning in 2005, the Evercom Defendants refused to remove their equipment from a jail in Simpson County, Kentucky after CPC had secured a contract from the Simpson County jail.  So long as the Evercom Defendants' equipment occupied the Simpson County jail, CPC could not install its equipment there.  The Evercom Defendants persisted in their refusal long enough to cause the Simpson County jail to breach its agreement with CPC.  The jail explained their decision by citing a desire to avoid becoming entangled in a dispute between service providers. The Simpson County breach resulted in a loss to CPC of at least $135,477.

9.     The Evercom Defendants repeated their practice of overstaying their contracts in February 2007, November 2010, and January 2011.  As a result, CPC could not install equipment for its February 2007 contract with McCreary County, Kentucky until July 2007.  CPC's November 2010 contract with Christian County,

- 10 -

DLI-6343609v5

Kentucky likewise was delayed until January 2011. And CPC's January 2011 contract with Hickman County, Kentucky was delayed two weeks. Each of these overstays imposed burden, expense, and delay on CPC's performance of its contractual obligations. Likewise, the counties breached their contracts with CPC because they could not timely tender the facility space and telecommunications infrastructure necessary for CPC to install its equipment. The delays, burdens, and expense resulting from the frustrated performance of these contracts caused CPC to incur damages.

10.     The Evercom Defendants advanced an unsupportable rationale to purportedly justify their unlawful refusal to remove equipment from the Simpson County, McCreary County, Christian County, and Hickman County jails. It is the industry practice for incoming inmate telecommunications service providers to provide Letters of Agency, executed by the jail or county, to the incumbent telecommunications service provider. These Letters of Agency authorize the incoming service provider to communicate on behalf of the jail or county and facilitate the transition to the new service provider. Despite this practice, and despite receiving Letters of Agency, the Evercom Defendants refused to communicate with CPC regarding matters related to the transition of service providers.

11.     The Evercom Defendants instead ignored the Letters of Agency and required all communications regarding the transition in service providers to come from the jail or county representatives. In response to the Evercom Defendants' refusal to communicate with CPC, the jails or counties sent additional letters to the Evercom Defendants. These letters provided further notice that CPC had authority to

- 11 -

DLI-6343609v5

communicate on behalf of the jails or counties to effect the transition. Nevertheless, the Evercom Defendants incredibly and inaccurately maintained that CPC had no authority to act on behalf of the jails notwithstanding the authorizing letters and Letters of Agency. On this basis, the Evercom Defendants either refused to communicate with CPC and/or stalled, delayed, burdened, undermined, and interfered with CPC's contracts by refusing to remove their equipment.

12.    In addition to refusing to remove their equipment from jails that had retained CPC, the Evercom Defendants would also continue contacting CPC's client jails well after CPC had contracted with those clients. Thus, beginning in 2006, after Whitley County, Kentucky selected CPC to be the telecommunications provider for its county jail, the Evercom Defendants persisted in their communications with the county. As a result of the Evercom Defendants' solicitations, Whitley County ultimately breached its contract with CPC resulting in a loss of at least $289,128.

13.    On information and belief, as the Evercom Defendants stalled, delayed, burdened, undermined, and interfered with CPC's contracts with Simpson County, McCreary County, Christian County, Hickman County, and Whitley County, the Evercom Defendants were aware of each of these contracts.

14.    Tactics other than the interference with CPC's contractual relationships also became part of the Evercom Defendant's unlawful competitive arsenal. In particular, from 2005 through 2011 the Evercom Defendants began confidentially publishing defamatory remarks about CPC to Kentucky counties and jails. By letter dated April 13, 2009, Richard A. Smith, Chairman, President, and CEO of Securus disclosed to Steven Kellam, jailer for Grant County, that CPC "[has] a practice of

- 12 -

encouraging our customers to break their contracts illegally . . . . It is against the law to operate in such ways and we and you should be concerned about a business that promotes the use of illegal practices." On information and belief, the Evercom Defendants related similar remarks orally and in writing to several other persons. They did so as part of calculated, clandestine scheme to destroy CPC's reputation in a manner difficult to detect and attribute to the Evercom Defendants.

15.    On or about July 2009, Debbie Waits, formerly an employee of the Evercom Defendants, began to work in CPC's sales department. Ms. Waits had resigned from her position with the Evercom Defendants for personal reasons in March 2009. After conducting a job search, Ms. Waits came into contact with CPC and ultimately received an offer to join CPC.

16.    By letter dated April 9, 2009, John Viola, Executive Vice-President of Sales for Securus, wrote to Mark Curry of Muhlenberg County Jail about Ms. Waits' decision to leave. Although Ms. Waits had not yet started working for CPC, Mr. Viola opined in this letter that Ms. Waits owed ongoing confidentiality obligations to Securus. On information and belief, Securus sent similar letters to several other persons. Mr. Smith later referenced this communication in his defamatory April 13, 2009 letter in which he accuses CPC of promoting "illegal practices."

17.    The retention of Ms. Waits caused the Evercom Defendants to escalate their hostility towards CPC. And, in short order, they commenced on their current course of threatening and ultimately filing litigation against CPC. The litigation includes the theories advanced in this lawsuit as well as alleged patent violations brought in another lawsuit. Ironically, having subjected CPC to years of unlawful

- 13 -

and dishonest competitive practices, the Evercom Defendants now petition this Court for legal and equitable relief.

### First Cause of Action – Tortious Interference with a Contractual Relationship

18.     CPC incorporates by reference paragraphs 1 through 17 of these claims, counterclaims and third-party claims.

19.     CPC had contractual relationships with Simpson County, McCreary County, Christian County, Hickman County, and Whitley County.

20.     At all times, as the Evercom Defendants stalled, delayed, burdened, undermined, and interfered with the CPC contracts identified in paragraph 16 of this answer, the Evercom Defendants were aware of these contracts.

21.     By refusing to remove equipment before the commencement date of CPC's contracts with Simpson County, McCreary County, Christian County, and Hickman County, the Evercom Defendants interfered with these contracts.

22.     By soliciting and communicating with Whitley County after CPC had already secured a contract with this county, the Evercom Defendants interfered with the Whitley County contract.

23.     The Evercom Defendants intended to interfere with the contracts identified in paragraph 18 of this answer, and such interference was improper.

24.     The Evercom Defendants' interference with the Simpson County, McCreary County, Christian County, Hickman County, and Whitley County contracts, caused these counties to breach their contracts with CPC by either cancelling the contracts or delaying performance.

- 14 -

DLI-6343609v5

25.    The Evercom Defendants had no privilege to interfere with CPC's contracts.

26.    As a direct and proximate result of the Evercom Defendants' acts or omissions, CPC has incurred damages.

27.    The Evercom Defendants acted with malice as they interfered with CPC's contracts because they acted with the purpose of stealing CPC's clients or reducing CPC's profitability.

28.    In addition, or alternatively, the Evercom Defendants' acted intentionally, willfully, wantonly, recklessly, maliciously, or with gross negligence when they interfered with CPC's contracts.  Quite simply, the Evercom Defendants had no colorable basis to believe that they had lawful authority to overstay their contracts or solicit CPC's existing clients.  The acts and omissions of the Evercom Defendants therefore entitle CPC to punitive damages.

## Second Cause of Action –
## Tortious Interference with Another's Performance of Its Own Contract

29.    CPC incorporates by reference paragraphs 1 through 28 of these claims, counterclaims and third-party claims.

30.    CPC had contractual relationships with Simpson County, McCreary County, Christian County, Hickman County, and Whitley County.

31.    By refusing to remove equipment before the commencement date of CPC's contracts with Simpson County, McCreary County, Christian County, and Hickman County, the Evercom Defendants interfered with these contracts.

- 15 -

DLI-6343609v5

32.    By soliciting and communicating with Whitley County after CPC had already secured a contract with this county, the Evercom Defendants interfered with the Whitley County contract.

33.    The Evercom Defendants intended to interfere with the contracts identified in paragraph 29 of this answer, and such interference was improper.

34.    The Evercom Defendants' interference with the Simpson County, McCreary County, Christian County, Hickman County, and Whitley County contracts, caused CPC's performance of these contracts to become more burdensome and expensive by preventing CPC from supplying services and collecting revenues on the contractual commencement date.  For the Simpson County and Whitley County contracts, CPC's performance became impossible because the counties terminated the contracts.

35.    The Evercom Defendants had no privilege to interfere with CPC's contracts.

36.    As a direct and proximate result of the Evercom Defendants' acts or omissions, CPC has incurred damages.

37.    The Evercom Defendants acted with malice as they interfered with CPC's contracts because they acted with the purpose of stealing CPC's clients or reducing CPC's profitability.

38.    In addition, or alternatively, the Evercom Defendants' acted intentionally, willfully, wantonly, recklessly, maliciously, or with gross negligence when they interfered with CPC's contracts.  Quite simply, the Evercom Defendants had no colorable basis to believe that they had lawful authority to overstay their

- 16 -

contracts or solicit CPC's existing clients.  The acts and omissions of the Evercom

Defendants therefore entitle CPC to punitive damages.

### Third Cause of Action –
### Defamation

39.    CPC incorporates by reference paragraphs 1 through 38 of these

claims, counterclaims and third-party claims.

40.    In an April 13, 2009 letter, Richard A. Smith, Chairman, President,

and CEO of Securus, disclosed to Steven Kellam, jailer for Grant County, that CPC

"[has] a practice of encouraging our customers to break their contracts illegally . . . .

It is against the law to operate in such ways and we and you should be concerned

about a business that promotes the use of illegal practices."

41.    The statements made by Mr. Smith in the April 13, 2009 letter, and

imputed to the Evercom Defendants, were defamatory and false because CPC has

never encouraged the Evercom Defendants' clients to break their contracts illegally.

Additionally, CPC has never resorted to or promoted "illegal practices" in its

competitive efforts against the Evercom Defendants

42.    By sending the letter, the Evercom Defendants published the

defamatory remarks.

43.    On information and belief, the Evercom Defendants related, both

orally and in writing, defamatory remarks similar to those contained in Mr. Smith's

April 13, 2009 to several additional persons both before and after April 13, 2009.

Each of these retellings constitute another actionable publication.

- 17 -

DLI-6343609v5

44.     On information and belief, the Evercom Defendants conveyed their defamatory remarks in individual letters and oral conversation to conceal these remarks from CPC and insure that the publication would likely go undetected.

45.     Remarks accusing CPC of illegal practices and encouraging illegal contractual breaches are defamatory *per se*.

46.     In addition, or alternatively, as a direct and proximate result of the Evercom Defendants' defamatory language, CPC suffered injury to its reputation and has incurred damages.

47.     The Evercom Defendants' acted intentionally, willfully, wantonly, recklessly, maliciously, or with gross negligence when they defamed CPC.  Quite simply, the Evercom Defendants had no colorable basis to believe that CPC had acted illegally.  The Evercom Defendants' defamation of CPC therefore entitles CPC to punitive damages.

### Attorneys' Fees and Costs

48.     CPC incorporates by reference paragraphs 1 through 47 of these counterclaims and third-party claims.

49.     Pursuant to applicable law, CPC is entitled to an award of its reasonable attorneys' fees and costs.

### Jury Request

50.     CPC requests a trial by jury.

### Prayer

For these reasons, CPC prays for dismissal of all claims in Evercom's complaint and judgment in its favor on the counterclaims and third-party claims, awarding all damages, consequential damages and punitive damages to CPC warranted by the

- 18 -

DLI-6343609v5

evidence, pre-judgment and post-judgment interest, reasonable and necessary attorneys' fees and costs, and other relief at law or in equity to which CPC is entitled.

Dated:    March 17, 2011                        Respectfully submitted,


                                                /s/ Stephanie D. Clouston
                                                Stephanie D. Clouston, *Admitted Pro Hac Vice*
                                                Texas State Bar No. 24002688
                                                JONES DAY
                                                2727 N. Harwood
                                                Dallas, Texas  75201
                                                214.220.3939 – Telephone
                                                214.969.5100 – Facsimile

                                                Joe Bill Campbell
                                                HUGHES & COLEMAN
                                                1256 Campbell Lane, Suite 201
                                                P.O. Box 10120
                                                Bowling Green, KY 42102
                                                270,782.6003 Ext. 322 – Telephone
                                                270.843.0446 – Facsimile


                                                *Attorneys for Defendant/Counter-Plaintiff/ Third-Party Plaintiff Combined Public Communications, Inc.*

- 19 -

DLI-6343609v5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2011, I electronically submitted the foregoing

document with the clerk of court for the U.S. District Court, Western District of

Kentucky, using the electronic case files system of the court.  The electronic case files

system sent a "Notice of Electronic Filing" to all counsel of record who have consented

in writing to accept this Notice as service of this document by electronic means.  Any

other counsel of record will be served by facsimile transmission, e-mail, and/or first class

mail.


                                   /s/ Stephanie D. Clouston

DLI-6343609v5